State, *ex rel.* Wright, Admr., *v.* Tomlinson *et al.*

---

State, ex rel. Wright, Administrator, *v.* Tomlinson et al.

[No. 2,065.    Filed January 28, 1897.]

Executors and Administrators.—*Special Administrator.—Statute Construed.*—A special administrator has no authority to enter into .an agreed statement of facts with another person concerning the assets of the estate, and pay over money to such person upon an order of court made thereon, under section 2391, Burns' R. S. 1894 (2237, R. S. 1881), declaring the powers of such special administrator to be "to collect and preserve the property of the testator or intestate until demanded by an administrator duly authorized to administer the same, when such special letters shall be deemed revoked." *pp.* 667, 668,

State, *ex rel.* Wright, Admr., *v.* Tomlinson *et al.*

PLEADING.—*Answer.*—A paragraph of answer which is pleaded in bar of the entire action is bad where it does not answer the entire complaint. *p. 668.*

APPEAL AND ERROR.—*Overruling Demurrer.*—*Harmless Error.*—The overruling of a demurrer to a paragraph of answer by a special administrator, which fails to deny an allegation of the complaint that such administrator neglected and refused to receive certain assets of the estate which came to his knowledge, and suffered same to be converted by others, is harmless where it is found by the court that the decedent left no assets in the State. *p. 674.*

INSURANCE.—*Assignment of Life Insurance Policy by Parol.*—A parol assignment of a life insurance policy, payable to the estate of the assured, made by the assured to his wife, is valid, where the policy does not declare an assignment without the consent of the company void. ·*p. 675.*

SAME.—*Equitable Assignment of Life Insurance Policy.*—An equitable assignment of a life insurance policy payable to the estate of the assured is effected where the insured instructed the general agent of the company, by letter, to have such policy made payable to his wife, although the change is not made until after his death. *pp. 675, 676.*

SAME.—*Assignment of Life Insurance Policy to Wife.*—An assignment of a life insurance policy, which was payable to the estate of insured, by the insured to his wife, is valid as against his creditors, except as to the amount of the premiums paid thereon, where it was taken out only two years before the transfer thereof, and the death of the insured. *pp. 677, 678.*

From the Montgomery Circuit Court. *Affirmed.*

*M. E. Clodfelter, Claude L. Thompson, George D. Hurley* and *Frank W. Hurley,* for appellant.

*G. W. Paul* and *H. D. Van Cleave,* for appellees.

COMSTOCK, C. J.—The complaint in this case is upon the bond of a special administrator; George N. Tomlinson, and his sureties, Wm. Tomlinson and David Hartman.

The complaint is in two paragraphs. A copy of the bond is filed with each paragraph.

The breaches of the bond assigned are that Tomlinson, special administrator, received the sum of $1,-971.88 which he converted to his own use and the use of others.

Second—That said special administrator failed to preserve the property of the estate which came into his hands.

Third—That said special administrator had knowledge of a large amount of personal property belonging to the estate, and failed and refused to preserve the same for the use of the estate.

Fourth—That $2,000.00 came into the hands of said special administrator which he wasted and wrongfully turned over to others, whereby the same was lost to the estate.

The breaches of the bond assigned in the second paragraph of complaint are in effect the same as those assigned in the first.

The appellee, G. N. Tomlinson, filed his separate answer in three paragraphs. The first is a general denial. The second alleges, in substance, that in March, 1894, he was duly appointed and qualified as special administrator of the estate of Austin L. Tomlinson, late of Montgomery county, Indiana, deceased, with bondsmen, as set out in the complaint; that after his appointment there came into his hands the sum of $1,971.85 from a certain insurance policy upon the life of his decedent; that Edith Tomlinson, the widow, claimed the money as her own, and demanded the same of him; that she had been substituted as beneficiary in said insurance policy, and threatened to bring suit against this defendant (appellee) for the recovery of the same; and that being unwilling to pay her said money without an order of court, he and the said Edith Tomlinson, by agreement, in good faith, on an agreed statement of facts submitted the question of ownership of said money to the circuit court of Montgomery county, Indiana, and thereupon the court found and adjudged that said money belonged to said Edith, and rendered judgment in her favor,

and against appellee, and ordered appellee to pay said money to her, and that afterwards, upon the faith of said order, appellee, acting as such trustee, paid to the said Edith the sum of $1,471.88 being the full amount of said money after deducting $500.00 therefrom, which he had paid for funeral expenses of decedent on the order of court, with the consent of said Edith; that he paid said balance to the said Edith on the 12th day of April, 1894, and on the 16th day of April, 1894, he filed in said circuit court his report in final settlement of his said trust, showing his compliance with the order of the court; which said report the court approved, and discharged appellee and his sureties from all liability on the bond in suit, which order of approval and discharge were duly entered in the proper record of said circuit court; that this is the same money claimed by the relator and set out in his complaint.

The third paragraph alleges that the money mentioned in complaint did not belong to said estate, but did of right belong to Edith Tomlinson, widow aforesaid, and the administrator had no right to the same.

For first paragraph of reply to the second paragraph of the separate answer of appellee, George N. Tomlinson, appellant, alleges in substance that appellee's appointment as special administrator was procured by fraud and collusion between the special administrator and Edith Tomlinson for the purpose of defrauding the creditors of said decedent; and as a part of the scheme the agreed statement of facts was entered into and submitted to the court, and the order procured for the payment of money to the widow aforesaid.

The second paragraph of appellee's reply to second paragraph of answer admits the filing of the agreed statement of facts entered into by and between the

special administrator and Edith Tomlinson, and that the court on said statement adjudged that the proceeds of said policy belonged to said widow, and ordered the payment of the same to her, but avers that the court had no jurisdiction to make such order upon said statement; that the estate was largely indebted, and the order procured for the purpose of defrauding the creditors of the estate, and that after the appointment of the general administrator, relator herein, and upon petition, to which Edith Tomlinson and George N. Tomlinson were made parties, procured the order of said court vacating said order; that the judgment setting aside the order made upon said agreed statement of facts was in full force and effect.

The fourth paragraph of reply to the third paragraph of answer of George N. Tomlinson alleges that George N. Tomlinson having procured himself to be appointed special administrator, having obtained the policy and presented it to the insurance company as special administrator, having surrendered it and received the money thereon, and deposited it in his name as special administrator, etc., he could not afterwards dispute the fact that it was his duty to receive the assets of the estate, preserve the same and turn them over to the regular administrator.

There was also a general denial.

Demurrers to the second and third paragraphs of answer were overruled. Demurrer to the fourth paragraph of reply was sustained and overruled as to the first and second. There was a trial had, and upon request of appellant the court made a special finding of facts, and stated its conclusions of law.

The first error assigned is overruling appellant's demurrer to second paragraph of separate answer of appellee, George N. Tomlinson. Appellee, by the facts averred in this paragraph, seeks to avoid liability on

the ground that he, as special administrator, and Edith Tomlinson entered into an agreed statement of facts concerning the ownership of the proceeds of the insurance policy upon which the court ordered the special administrator to pay the money to her, and that after he had complied with the order of the court he made a report of said trust, and resigned therefrom, which report was approved, his resignation accepted and he discharged; that this is the money referred to in the complaint.

This paragraph, while addressed to the whole complaint does not answer that portion of it which avers that the special administrator "wholly neglected and refused to receive more than $500.00 of the property and assets of said estate which came to his knowledge and suffered and permitted the same to be wrongfully taken by others and converted to their own use."

The complaint charges a neglect of duty as to money and other assets which he refused to receive. This allegation is not met by this allegation of answer. The demurrer therefore should have been sustained. *Farman* v. *Chamberlain*, 74 Ind. 82; *Dunn* v. *Barton*, 2 Ind. App. 444.

The demurrer should have been sustained for another reason. The powers of a special administrator are declared to be by statute "to collect and preserve the property of the testator or of the intestate until demanded by an executor or administrator duly authorized to administer the same when such special letters shall be deemed to be revoked." Section 2391, Burns' R. S. 1894 (2237, R. S. 1881). The question is passed upon in *Tomlinson* v. *Wright, Admr.*, 12 Ind. App. 292.

The court says in speaking of the special administrator, appellee in this case, and of the money realized from the insurance policy mentioned in the answer,

that "all he [special administrator] was authorized to do with it was to hold and possess it until an administrator shall be appointed and then pay the same to him. He had no authority to allow, or to pay claims or to enter into an agreed case in relation to the money which he had collected as such special administrator." See, also, *Cole, Admr.*, v. *Lafontaine*, 84 Ind. 446.

The third paragraph of the answer is addressed only to the averment of money in the complaint, alleging that it did not belong to the estate of Austin L. Tomlinson. It is pleaded in bar of the action and as it does not answer the entire complaint, the demurrer should have been sustained. *Farman* v. *Chamberlain*, *supra*.

The fourth assignment of error is the sustaining of the demurrer to the fourth paragraph of reply to the third paragraph of answer of appellee.

It is pleaded as an estoppel, but as we have held that paragraph of answer insufficient, it is not necessary to discuss this ruling.

The court in the special finding of facts found that Austin L. Tomlinson was, on the 1st day of March, 1894, and for a long time prior thereto had been a resident of Montgomery county, Indiana, and that on said date while temporarily sojourning at Fullerton, California, he died intestate; that on the 3d day of March, 1894, George N. Tomlinson was, by the clerk of the circuit court of Montgomery county, in vacation, appointed special administrator of the estate of said deceased and executed his bond with his co-defendants in this action, William Tomlinson and David Hartman as his sureties, which is the bond sued on in this action; which bond was duly approved, and he immediately thereafter qualified and entered upon the discharge of his duties as such special administrator; that on the 26th day of January, 1892, the said

Austin L. Tomlinson, then an unmarried man, obtained a policy from the Equitable Life Assurance Society of the United States, a corporation organized under the laws of the state of New York, with its home office in New York City, insuring his life in the sum of $2,000.00, made payable to his estate, which policy was in force at the date of his death; that the mode provided by said society for assigning policies or changing the beneficiary, required the holder of the policy desiring the transfer or change, to make out an application to the company giving the number and date of policy and full name of beneficiary, which application should be accompanied by one dollar to pay for issuing a new policy; that no such application was ever made, and that no new policy was issued; but that such mode was not stated in or on the policy; that on the 15th day of February, 1893, the said Austin L. Tomlinson married one Edith Guthrie, who continued to be and was his wife at the time of his death, and he had one child by her still living; that on the 4th day of January, 1894, said Austin L. Tomlinson was the owner and in possession of a stock of groceries in Crawfordsville, Indiana, of the value of $800.00; that he had been engaged in the grocery business for more than two years prior to that date; that he had notes and obligations owing him, the proceeds of said business, amounting to more than $3,000.00; that he was indebted to divers persons, firms and corporations for goods purchased in carrying on said business, the sum of $4,000.00; that all of said groceries, notes and obligations were in his life time applied to the payment of said indebtedness, and no part of the same came into the hands of said special administrator; and that on the date of his death said Austin L. Tomlinson had no rights, credits, property or choses in action in the State of Indiana, except said

policy of insurance; that immediately after his appointment, said special administrator demanded and received of said Equitable Life Insurance Company payment of said policy the sum of $1,971.88, and gave his receipt therefor as special administrator; that he paid out for funeral and burial expenses of said Austin L. Tomlinson, and court costs $500.00, taking receipts therefor as special administrator. That on the forenoon of his death the deceased caused to be prepared, signed, acknowledged, and caused to be mailed to the general agents of said Equity Life Assurance Company, at Indianapolis, the following instructions:

"FULLERTON, CAL., March 1, 1894.
To RICHARDSON & McCREA,
    Gen. Agents Eq. Life Assurance Co. of N. Y.
        Indianapolis, Indiana.

Gentlemen: Please have life insurance policy taken out by me (A. L. Tomlinson) in 1892 for the amount of two thousand dollars, and made payable to my estate, transferred, and instead have the amount of said policy made payable to my wife, E. L. Tomlinson.

[Signed]            A. L. TOMLINSON."

That he executed the foregoing instrument for the purpose of having said policy transferred and made payable to his· wife; that before deceased left his home for California he expressed his intention of giving said policy to his wife, and after her arrival at Fullerton he informed her that he had done so; that the agents of said Equity Assurance Company received said letter after the death of said Austin L. Tomlinson, and answered the same on the 6th of March, 1894, giving instructions as to the manner in which he should make out the application for change of beneficiary in his policy. The court further found that between the 10th day of March, 1894, and the 1st day of April, 1894, said letter of the insurance com-

pany came into the possession of said Edith Tomlinson, and she and the said George N. Tomlinson placed the same in the hands of Paul & Bruner, attorneys of the said special administrator, and said attorneys, after having advised with the said widow and special administrator, prepared an agreed statement of facts which was signed and verified by the said widow and special administrator; said agreed statement of facts recites the fact of said Austin L. Tomlinson having taken out the insurance policy heretofore referred to, in favor of his estate, his subsequent marriage to said Edith, the birth of the child, the failure of the health of the said Austin, his trip to California for the benefit of his health, his letter to the insurance company requesting the change of beneficiary, the answer of the assurance company to said request; that he did not have said insurance policy; that it was at his home in Crawfordsville in the possession of his wife; that his wife had not accompanied him to California; that several days before he died he had expressed his desire and intention of transferring said policy to his wife, but was persuaded to wait until her arrival; that she not arriving, and fearing to wait longer, he made the assignment, thinking it sufficient to transfer all rights in the same to her; that George N. Tomlinson was appointed administrator, and was ignorant that said policy had been transferred; that deceased left no estate unless the policy belonged to the estate, that relying on the fact that said policy belonged to the estate he had advanced expenses of last sickness and funeral expenses of deceased in the sum of $500; that on the 2d day of April, 1894, said assurance company paid the amount due on the policy, $1,971.88 to the special administrator, which amount is claimed by said widow, and asking the court to determine to whom said money belonged and to make such order as

the court deemed to be right. That said attorneys, Paul & Bruner, on the 12th day of April, 1894, presented the said agreed statement of facts to the judge of the circuit court of Montgomery county in chambers; that the same was filed and docketed in said court, and on said day, upon said agreed statement of facts, said court ordered and decreed that the proceeds of said policy, $1,971.88, belonged to said Edith Tomlinson and entered judgment in favor of said Edith and against said special administrator. The court further finds, that in pursuance of said order, said special administrator paid to said Edith Tomlinson the proceeds of said policy, after deducting $500.00 expended as aforesaid, viz: $1,471.88, which sum she receipted to him for, as special administrator; that on the 16th day of April without any notice to the heirs or creditors, said special administrator presented to the court his final settlement report showing the receipts and expenditures as hereinbefore stated, and the payment to said Edith Tomlinson the sum aforesaid, and that he had no other property or assets in his hands as special administrator; that he asked that his report be approved, and that he be discharged as special administrator, and the court made an order approving said report and discharging said special administrator; that said Paul & Bruner received from the said Edith Tomlinson for services rendered as attorneys in the matter of said estate and the procurement of said settlement one hundred dollars out of said insurance.

That on the 2d day of May, 1894, Charles W. Wright, relator, the duly appointed and qualified regular administrator of said estate, filed his petition in said court alleging, among other things, that said agreed statement of facts was procured, and the order and decree entered thereupon, were obtained by fraud prac-

ticed upon the court by the said George N. Tomlinson as special adminstrator, and that the court had no jurisdiction of the subject-matter to make such order upon such statement of facts; that said special administrator had no authority to make such statement of facts with said Edith Tomlinson; that said order was fraudulent and void, and that the same should be set aside and vacated. That on the 25th day of May, 1894, the court sustained said petition and entered a judgment setting aside and vacating said order and decree and all orders and decrees made under the same. The court further finds that all orders and decrees under said order and judgment were by said court upon said petition set aside and vacated, the court stating as a reason that it had no jurisdiction to make the same. That the said special administrator and said Edith Tomlinson were parties defendant to said petition, and appeared thereto by their attorneys, Paul & Bruner, and filed answers to said petition and resisted the vacation of said judgment so made upon said agreed statement of facts; that afterwards the said George N. Tomlinson and said Edith Tomlinson appealed to the Appellate Court of the State of Indiana from said judgment vacating the order and judgment upon said agreed statement of facts; that the judgment so appealed from was afterwards by said Appellate Court affirmed.

That claims have been filed against the estate of A. L. Tomlinson and allowed to the amount of $1,400.00, which remain wholly unpaid; that said George N. Tomlinson had knowledge of such indebtedness when he made said agreed statement of facts and at the time he paid said money to said widow; that in connection with the order vacating the judgment on the agreed statement of facts, the court made the follow-

ing order: "And it is further ordered by the court that the further proceedings in the cause No. 2418 probate docket, that the plaintiff, W. Wright (relator), present administrator * * * be substituted for George N. Tomlinson, formerly special administrator, and that George N. Tomlinson and Edith Tomlinson be made defendants, and that said administrator frame and tender issue to defendants that will determine the ownership of a certain insurance policy mentioned in the agreed statement of facts made on record in a former hearing of this cause, and also determine the right to the proceeds of said policy, and the said Wright is ordered to institute proceedings as above indicated and prosecute the same to a speedy and proper conclusion." And the court finds that relator did not obey said order.

As a conclusion of law the court stated that the plaintiff had no right of recovery.

The court having found as facts that the decedent left no assets in the State of Indiana at his death to the possession of which a special administrator would have been entitled, unless said insurance policy belonged to his estate, and that the order made and entered upon the agreed statement of facts had been vacated and set aside. We cannot see that the appellant was harmed by the ruling of the court upon the demurrer to the second paragraph of appellee, George N. Tomlinson's answer.

The Appellate Court, in *Tomlinson* v. *Wright, Admr., supra*, in affirming the judgment vacating the order made upon the agreed statement of facts, was careful to say that the merits of the controversy were not before it and that the only question it deemed necessary to consider was whether the special administrator possessed such power as authorized him to enter into such an agreement with the widow of decedent, ad-

ding, "It is true as a matter of course if the appellant, Edith Tomlinson, was the equitable owner of the policy of insurance, then the administrator, whether special or general, had no right thereto, nor to the proceeds thereof as against her. If, on investigation by the court having jurisdiction of the parties and of the subject-matter of the controversy, it is found that said Edith was, at the death of her husband, entitled to the money, the appellee will not be entitled to recover against appellants or either of them.

The court makes no finding that the relator was entitled to the proceeds of said policy, nor is there any finding of fraud on the part of the special administrator or said Edith Tomlinson. The burden was upon the relator (appellant) upon both of these averments of the complaint.

A life insurance policy is a chose in action and may be assigned. Appellant contends that the common law will be presumed to be in force in California when the insured directed the change of beneficiary in the policy, and that, under the common law, choses in action are not assignable. Admitting that under the common law the policy could not be assigned so as to pass the legal title to the instrument, or the money, yet a transfer would be regarded as an equitable assignment and enforced in equity. *Pomeroy* v. *The Manhattan Life Ins. Co.*, 40 Ill. 398.

When the policy does not declare an assignment without the consent of the company void, a parol assignment is valid. *O'Brien* v. *Prescott Ins. Co.*, 11 N. Y. Supp. 125.

Knowledge of the assignment of a life insurance policy is important to the insurer to prevent the possibility of its being compelled to pay both the assignee and the legal representatives of the insured.

In fire insurance policies there is generally a con-

dition that any assignment will be void, without the assent of the insurer be first obtained. The reason is obvious,—a company may be willing to issue a policy to one person and not another. *Robinson* v. *Cator*, 78 Md. 72, 26 Atl. 959.

A life insurance policy may be transferred by delivery without writing. *Marcus* v. *St. Louis Mut. Life Ins. Co.*, 68 N. Y. 625.

A husband may orally assign a policy of insurance on his own life to his wife. *Chapman* v. *McIlwrath*, 77 Mo. 38, 46 Am. Rep. 1.

In *Grand Lodge, etc.*, v. *Child*, 70 Mich. 163, 38 N. W. 1, in which case the certificate of membership made the betrothed of the insured, beneficiary, he retaining the certificate in his possession. She married another, and the certificate having been lost he made a statement of the loss and applied for a reissue of the certificate to his son as beneficiary, and the application was refused; the rules of the organization required the change to be endorsed on the original certificate. By the advice of the officers of the organization he attempted to make the change of beneficiary by giving power of attorney to collect the amount which should accrue under the certificate. The court held that such acts constituted an equitable change of beneficiary, and that the son was entitled to the fund.

The general rule that the insured is bound to make such change of beneficiary in the manner pointed out by the policy and by-laws of the association is subject to exceptions, and one is that, if it be beyond the power of the insured to comply literally with the regulation, a court of equity will treat the change as having been legally made. *Supreme Conclave* v. *Cappella*, 41 Fed. 1.

In short, subject to the claims of creditors to avoid

a transfer made in fraud of their rights, any act which indicates an intention to transfer the interest in the policy, whether voluntarily or for a consideration, will be held good. Bliss on Insurance, section 331.

From the findings of the court there can be no question as to the intention of the insured to transfer to his wife his rights in the policy under consideration; and in the light of the authorities cited, and many others to the same effect there can be no doubt that an assignment in equity was made valid as to every one, unless the creditors of the assured are to be excepted.

Can this equitable assignment made by an insolvent debtor be upheld against the creditors?

It is the duty of the husband and father to provide reasonably for his dependent family. The law favors the making of reasonable provision by a man for his dependent family, and in *Johnson* v. *Alexander*, 125 Ind. 575, 9 L. R. A. 660, the Supreme Court of Indiana has said: "It is not a violation of the statute, and in fraud of creditors for a debtor, though insolvent, to contribute and pay a reasonable amount for insurance for the benefit of his family."

In *Pence* v. *Makepeace*, 65 Ind. 345, it is held that only on the clearest proof of fraud, if at all, can the premiums paid by an insolvent debtor on a policy of insurance on his life for the benefit of his wife and children be revoked by his creditors, and in no event can any excess over the amount of the premium so paid be recovered.

To the same effect is *Washington Central Bank* v. *Hume*, 128 U. S. 195. In 2 Bigelow Frauds, p. 129, it is said, "a debtor though insolvent may use his earnings to pay for insurance on his life, in favor of his family."

In *McCutcheon's Appeal*, 99 Pa. St. 133, it is held that when a person takes out a policy of insurance

upon his own life and subsequently assigns the same to his wife, child, or other dependent relative, the mere fact that the assignor in such case is insolvent at the time of making the assignment, does not warrant the inference that the assignment was in fraud of creditors.

Authorities in the same line, to the same effect, might be multiplied, but it is not necessary. There is nothing in the findings of the court to show bad faith; on the contrary, they show a commendable desire on the part of the husband to make some provision for his wife and child. The policy was taken out in January, 1892, and transferred March 1st, 1894, at which date the insured died. At most his creditors are injured if the transfer is upheld by the amount of premium paid for two years. The amount might have been ascertained in the proceedings which appellant was ordered by the court below to institute, to determine the ownership of the insurance policy in question, which order of court he failed to obey. In our opinion the transfer of the policy was valid and not in fraud of creditors. Upon the effect of the setting aside of the order made on the agreed statement of facts to pay the widow the balance of the proceeds of the insurance policy, after the special administrator had paid to the widow under said order said balance, we deem it only necessary to say that trustees, acting under orders of the court having jurisdiction of the subject-matter, will be protected thereby. If by reason of such order or decree money is paid to one not entitled thereto, the protection afforded to the trustee is not extended to the person so paid. In such cases the party really entitled to the money, if not a party to the previous suit and bound by the decree, may have suit against the person to whom the money is paid.

We find no error for which the judgment of the court below should be reversed.

Judgment affirmed.